BOWERS MANUFACTURING COMPANY, INC., Plaintiff-Appellant, *v.* CHICAGO MACHINE TOOL COMPANY *et al.*, Defendants-Appellees.

Second District   No. 82—820

Opinion filed August 17, 1983.

Richard L. Lucas, of Breen, Lucas & Poris, of Addison, for appellant.

Brigitte Schmit Bell and Gerald G. Saltarelli, both of Butler, Rubin, Newcomer & Saltarelli, of Chicago, for appellees.

JUSTICE VAN DEUSEN delivered the opinion of the court:

Plaintiff, Bowers Manufacturing Company, Inc. (Bowers), appeals the dismissal with prejudice of its three-count amended complaint against defendant Chicago Machine Tool Company (CMTC), a division of F.J.M. Corporation; Di-Acro, a division of Houdaille Industries, Inc.; and Matco Leasing, Ltd., an affiliate and wholly owned subsidiary of Chicago Machine Tool Company. On appeal, plaintiff contends that counts I and II of its amended complaint stated a cause of action against CMTC for breach of oral contract and breach of express warranty, that count III stated a cause of action for breach of express and implied warranty, and that the defendants' motion to dismiss did not assert affirmative matter sufficient to permit the dismissing of said complaint. Therefore, according to Bowers, the trial court erred in granting defendants' motion to dismiss.

In the first count of its amended complaint, Bowers alleged that CMTC orally represented to Bowers that a certain turret punch manufactured by Di-Acro would meet all the specifications and requirements as given by Bowers to CMTC; that plaintiff agreed to purchase the machine based upon these oral representations; that CMTC arranged for financing through Matco, which defendant believed to be an affiliate and wholly owned subsidiary of CMTC; that Bowers and Matco executed an "Equipment Lease Purchase Agreement" for the lease and ultimate purchase of the machine, a copy of which agree-

ment was attached to the complaint; that the equipment was delivered to Bowers; that, pursuant to the contract, Bowers caused $94,663 to be paid to Matco, which Bowers alleged to be the purchase price; that defendant knew the intended use and that Bowers relied on their expertise at the time of the negotiation, order and delivery; that Bowers found the equipment to be defective and unsound and not useable for the intended purpose; and that such failure constituted a breach of contract.

Count II made basically the same factual allegations, but concluded that defendants expressly warranted that the machine would meet the specifications and perform the work required and that the failure to do so constituted a breach of section 2—313 of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 2—313). Count III realleged the same facts but concluded that the equipment failed in material respects to conform to the implied warranties of merchantability and of fitness for a particular purpose, in violation of sections 2—314 and 2—315 of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, pars. 2—314, 2—315).

Defendants Chicago Machine Tool Company and Di-Acro brought a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—619), formerly section 48 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 48). In their motion, defendants asserted that defendants had, as a matter of law, disclaimed all warranties upon which plaintiff relied. They claimed that, in conformity with section 2—316(2) of the Uniform Commercial Code, they expressly excluded the implied warranty of fitness for a particular purpose, the express warranty of fitness for a particular purpose, and the implied warranty of merchantability. Defendants attached to their motion a copy of the Matco-Bowers "Equipment Lease Purchase Agreement" wherein all express and implied warranties of fitness and merchantability were purportedly disclaimed and the lessee was extended the same warranty given by the manufacturer to the lessor; a copy of the written warranty of Di-Acro, the manufacturer, in which, *inter alia*, all express and implied warranties of fitness and merchantability were also purportedly disclaimed; and a copy of Bowers' sworn answers to interrogatories filed in an earlier suit over the same matter, which had been dismissed for want of prosecution. In those answers to interrogatories, John Bowers, the president of plaintiff, had stated that the warranties under which it was claiming were not oral but were written and furnished by Matco Leasing on April 4, 1980, and Bowers also attached to these answers a copy of the Di-Acro warranty. Lastly, defendants alleged in

their motion that section 2—202 of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 2—202) forbids the introduction of parol evidence to contradict a written agreement such as the one under which plaintiff asserted to be claiming.

On August 26, 1982, after hearing argument on defendants' motion, the court ruled that defendants had conspicuously disclaimed the warranties upon which the complaint rested, that the relevant warranty language in the Matco lease and purchase agreement was not fatally ambiguous, that Bowers' characterization of the negotiations leading up to the agreement as constituting an oral agreement was an attempt to avoid the terms of the Matco lease and purchase agreement regarding warranties, and that the terms of the latter, written agreement did comply with the Uniform Commercial Code regarding warranty disclaimers. In response to Bowers' requests for clarification, the court stated that, while count I was framed as a breach of oral contract, such purported oral contract was, in essence, a negotiation or an oral undertaking or discussion between the parties made prior to the execution of the written agreement, and that written agreement was binding between the parties. The court therefore granted defendants' motion to dismiss as to all three counts. Plaintiff appealed.

To defeat a claim or demand, the alleged affirmative matter in a section 2—619 motion (Ill. Rev. Stat. 1981, ch. 110, par. 2—619) must be something more than evidence offered to refute a well-pleaded fact in the complaint, for such well-pleaded facts together with all reasonable inferences must be taken as true for purposes of the motion to dismiss; the alleged affirmative matter must negate the cause of action completely or refute a crucial conclusion of law or conclusions of material facts contained in or inferred from the complaint. (*Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d 700, 709-10.) With these principles in mind we have reviewed plaintiff's contentions on appeal.

Two principal issues are present in this appeal: first, whether plaintiff can bring suit for breach of contract or breach of warranty arising out of an alleged oral contract to purchase a turret punch from CMTC or whether such an alleged agreement constituted preliminary matters which were superseded by its written contract with CMTC's wholly owned subsidiary Matco Leasing; and second, whether Matco and Di-Acro effectively disclaimed the warranties of fitness for use for a particular purpose and merchantability.

In making his ruling in favor of defendants, the trial judge recognized that plaintiff had alleged an oral agreement, but he found that there was a written agreement between the parties, the "Equipment

Lease Purchase Agreement," attached to and incorporated in the complaint and that, as asserted by defendants in their motion to dismiss, section 2—202 of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 2—202) does not permit evidence of a prior agreement or contemporary oral agreement that would contradict the written agreement to be introduced. The trial judge observed that Bowers was attempting to avoid the tenets of the written agreement by maintaining that the prior negotiations constituted, in and of themselves, an enforceable agreement.

Section 2—202 of the Uniform Commercial Code provides as follows:

> "Sec. 202. Final Written Expression: Parol or Extrinsic Evidence. Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
>
> (a) by course of dealing or usage of trade (Section 1—205) or by course of performance (Section 2—208); and
>
> (b) by evidence or consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." (Ill. Rev. Stat. 1981, ch. 26, par. 2—202.)

Clearly, if the alleged oral agreement in this case was a prior negotiation that contradicted the written contract, evidence regarding such oral agreement would be prohibited according to this provision.

Bowers posits several reasons why the parol evidence rule should not apply in this case. First, Bowers argues that the only written agreement is the Matco agreement, which is a lease and not a sale contract and to which CMTC was not even a party. Therefore, Bowers maintains, evidence of the oral agreement and express warranties relative thereto should have been admissible because the Matco agreement was distinct from and collateral to the contract made with CMTC. (See *Service Iron Foundry, Inc. v. M.A. Bell Co.* (1978), 2 Kan. App. 2d 662, 588 P.2d 463; *Harriss, Magill & Co. v. Rodgers & Co.* (1925), 143 Va. 815, 129 S.E. 513.) Second, Bowers likens the Matco agreement to the security agreement in *Drier v. Perfection, Inc.* (S.D. 1977), 259 N.W.2d 496, since both relate to financing, and maintains that the Matco lease was not a writing intended by the parties as a final expression of the agreement so that evidence of the oral war-

ranty was admissible.

■ These cases, however, are inapposite based on the facts of the case at bar. In its amended complaint, Bowers alleged that Matco was an affiliate and wholly owned subsidiary of CMTC and that payments made on the purchase of the equipment were made to CMTC via Bowers' contractual arrangements with Matco Leasing. Bowers cannot now claim that his dealings with CMTC were separate and apart from those with Matco Leasing. Moreover, the "Equipment Lease Purchase Agreement" is not merely a financing document like a security agreement that is collateral to a contract of sale. By its terms, it establishes a 60-month lease and provides for the lessee, at its option, to purchase the subject equipment at the end of the lease term for $1.

We agree with the trial court. We conclude from our examination of the "Equipment Lease Purchase Agreement" that it constitutes a complete agreement for the lease and sale of the turret punch and explicitly covers the subject matter of warranties. We also conclude that it was intended by the parties to be a final expression of their agreement, and, therefore, under section 2—202 of the Uniform Commercial Code, evidence of any oral agreement with CMTC would not be admissible to contradict the terms of the written agreement (Ill. Rev. Stat. 1981, ch. 26, par. 2—202).

■ Turning to what appears to be the more crucial issue in this case, Bowers maintains that both Matco and Di-Acro failed to effectively disclaim the warranties upon which its claims rested. First, Bowers attacks the validity of the Matco agreement on the basis that the warranty disclaimer therein is ambiguous because it first disclaims all express and implied warranties and then extends to the purchaser whatever warranties were extended by the manufacturer to Matco. Therefore, according to Bowers, the disclaimer was not sufficiently clear and specific to apprise Bowers of what it was waiving (*e.g., Imperial Stamp & Engraving Co. v. Bailey* (1980), 82 Ill. App. 3d 835, 837).

The pertinent portion of the "Equipment Lease Purchase Agreement" is paragraph 4 which reads as follows:

"4. **WARRANTIES.** LESSOR MAKES NOT EXPRESS OR IMPLIED WARRANTY WHATSOEVER OF TITLE, MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR OTHERWISE REGARDING THE EQUIPMENT OR ANY UNIT THEREOF except that [Lessor to delete (a) or (b)] (a) Lessor makes to Lessee the current manufacturer's warranty with respect to the Equipment as set forth on the warranty form to be delivered to the Lessee in connection therewith, or (b) Lessor shall, at Les-

see's expense, make available to Lessee any rights of Lessor under any express or implied warranties of the manufacturer or vendor of the Equipment to the extent that any such rights are assignable. Lessee represents and warrants that it has full power and authority to execute, deliver and perform this Agreement and that this Agreement constitutes its legal, valid and binding obligation."

Section 2—316(1) of the Uniform Commercial Code requires that words or conduct creating warranty and words or conduct limiting or negating warranty must be construed whenever reasonable as consistent with one another. (Ill. Rev. Stat. 1981, ch. 26, par. 2—316(1).) The trial court here found that Matco's failure to delete phrase (a) or (b) from paragraph 4 of its agreement provided two modes by which comparable warranties could be passed from the manufacturer to the buyer but that there was no fatal inconsistency in the disclaimer. The interpretation, construction or legal effect of a contract is a matter to be determined by the court as a question of law, and a reviewing court may make an independent determination of such a question. *Mazanek v. Rockford Drop Forge Co.* (1981), 98 Ill. App. 3d 956, 959.

Here, it is evident that Matco's disclaimer apprised Bowers that Matco was disclaiming all warranties subject to the stated exceptions allowing the manufacturer's warranty, if any, to be extended to the buyer. The manufacturer's (Di-Acro's) warranty provision likewise disclaimed all warranties and limited its liability to repair or replacement of parts it determined to be defective, or, at its option, replacing the product or refunding the price. In fact, in its brief on appeal, Bowers admits that "Matco's obligation under the contract was to supply the same implied and express warranties as those given by Di-Acro." Contrary to Bowers' position, the Matco warranty provision does not create a warranty in one breath and surreptitiously deny it in another (*Alan Wood Steel Co. v. Capital Equipment Enterprises, Inc.* (1976), 39 Ill. App. 3d 48, 58), and the trial court appears to have properly found no fatal ambiguity or inconsistency in that provision.

A disclaimer similar to Matco's was upheld in *Walter E. Heller & Co. v. Convalescent Home* (1977), 49 Ill. App. 3d 213, on the basis of conspicuousness. However, it is also important to note that, like the Matco agreement, the disclaimer upheld in *Heller* appears after the word "Warranties" and passed on warranties made by the supplier of the goods while disclaiming all other express and implied warranties. In *Blankenship v. Northtown Ford, Inc.* (1981), 95 Ill. App. 3d 303, cited by Bowers, the court found a disclaimer of all warranties by an automobile dealer following the phrase "Factory Warranty" to be mis-

leading in a consumer transaction. The transaction in *Heller* was between two business entities while that in *Blankenship* was a consumer transaction, and the courts are less reluctant to hold educated businessmen to the terms of contracts to which they have entered than consumers dealing with skilled corporate sellers. *Cf. Dillman & Associates, Inc. v. Capitol Leasing Co.* (1982), 110 Ill. App. 3d 335, 341; *Walter E. Heller & Co. v. Convalescent Home* (1977), 49 Ill. App. 3d 213, 219-20 ("[c]ourts are generally reluctant to use the unconscionability doctrine to rewrite the terms of negotiated contracts into which businessmen have entered").

■ Next, Bowers asserts that Di-Acro did not effectively disclaim its warranties. Initially, Bowers makes a similar argument to the one raised against the Matco agreement, that Di-Acro gave a warranty on one side of its warranty card and took it away on the other. The face of the warranty card states that any part found defective within one year of purchase will be replaced free of charge *"per* the complete warranty *contract* on the reverse side" (emphasis added), and the reverse side clearly sets forth Di-Acro's liability including, in bold-face type, a statement that the warranty is in lieu of any other warranty express or implied including those of merchantability and fitness for use. A similar restrictive warranty has been held to be authorized and proper. *Adams v. J.I. Case Co.* (1970), 125 Ill. App. 2d 388.

Bowers inaccurately quotes the face of the warranty card in its brief on appeal as "the 'complete warranty on the reverse side.'" If the card had the wording quoted by Bowers, an argument might legitimately be made that Di-Acro stated that there was a "complete warranty" on the reverse side and, in fact, did not furnish such a complete warranty. However, the face of the warranty card informed the buyer that the "complete warranty contract" was on the reverse side and that the extent of Di-Acro's warranty liability would be determined by its terms. The ambiguity and inconsistency Bowers seeks to find in the Di-Acro disclaimer simply is not present.

■ Regarding the implied warranties of merchantability and of fitness, Bowers contends that the Di-Acro disclaimer was not "conspicuous," as required by the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 2—316(2)). Section 1—201(10) of the Uniform Commercial Code provides as follows:

"A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting

type or color. *** Whether a term or clause is 'conspicuous' or not is for decision by the court." (Ill. Rev. Stat. 1981, ch. 26, par. 1—201(10).)

Bowers contends that "a reasonable person's attention would not have been drawn to the fine print on the reverse side of what appears to be a warranty." However, unlike the situation in *Anderson v. Farmers Hybrid Cos.* (1980), 87 Ill. App. 3d 493, cited by Bowers, the face of Di-Acro's warranty card specifically states that the warranty contract is on the reverse side; it does not simply state that the order is "subject to conditions on the reverse side" (87 Ill. App. 3d 493, 495). A reasonable person in Bowers' position would have read the reverse side. Further, as defendants maintain, the conspicuousness of the disclaimers complies with the terms of the aforesaid section 1—201(10) of the Uniform Commercial Code because the Matco disclaimer is in larger type and capitalized, and the Di-Acro disclaimer is in bold-face type.

Whether a term or clause is "conspicuous" or not is for decision by the court. (Ill. Rev. Stat. 1981, ch. 26, par. 1—201(10).) The trial court properly found that the disclaimers in both agreements in question were conspicuous.

■ Bowers also argues that defendants' motion to dismiss was insufficient to sustain a dismissal under section 2—619 of the Code of Civil Procedure because defendants failed to allege the timeliness of Di-Acro's disclaimer. Bowers did not raise the issue of timeliness either in its complaint or by way of a counteraffidavit filed in response to defendants' motion to dismiss. Bowers nevertheless insists that the defendants have the burden of proving the affirmative matters upon which their motion rests and have failed to do so regarding the timeliness issue.

In their motion to dismiss, defendants alleged that Di-Acro expressly excluded any express warranty of fitness or implied warranty of fitness or merchantability pursuant to section 2—316 of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 2—316). That provision does not specify when such a disclaimer of warranties must be made, and defendants' motion appears to meet the requirements that are set forth therein. Bowers has not cited authority for the proposition that the movant in this type of case must allege timeliness in the motion to dismiss.

The court in *Gideon Service Division v. Dunham-Bush, Inc.* (1980), 80 Ill. App. 3d 633, cited by Bowers, did not find that the motion to dismiss in that case was insufficient for failure to allege timeliness of the disclaimer. In *Gideon*, the affidavit in support of the mo-

tion to dismiss stated that the seller transmitted the sales order bearing its written disclaimer to the buyer about one month after the order and that it was the seller's custom to transmit such order to the buyer when the goods were shipped. The court found that the record before it established that the seller attempted to disclaim warranties after the contract of sale was made, and the disclaimer, as alleged by the movant, was therefore ineffective.

The court in *Gideon* found that the record showed no assertion that any similar disclaimer was made at the time the goods were ordered or any indication that the buyer assented or even knew of the disclaimer and its conditions. Similarly, in *Midland Supply Co. v. Ehret Plumbing & Heating Co.* (1982), 108 Ill. App. 3d 1120, the seller could not rely on the manufacturer's warranty disclaimer submitted to the buyer on delivery of the goods where no similar disclaimer was made by the seller when the goods were ordered. In this case, by contrast, defendants' motion incorporated by reference the terms of the attached Matco sales contract warranty disclaimer showing that Bowers was aware at the time of the agreement that its remedies would be limited to those not disclaimed by the manufacturer.

In sum, the disclaimers of Matco and Di-Acro constituted affirmative matter which was a defense that negated Bowers' cause of action completely and was a proper grounds for dismissal of Bowers' amended complaint under section 2—619(a)(9). See *Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 93.

The order of the trial court dismissing the complaint with prejudice is affirmed.

Affirmed.

NASH and UNVERZAGT, JJ., concur.