GREG SESSION *et al.*, Plaintiffs-Appellees, v. CHARTRAND EQUIPMENT COMPANY, Defendant-Appellant.

Fifth District   No. 5—84—0355

Opinion filed May 2, 1985.

720

Walker & Williams, P.C., of Belleville (Thomas E. Jones and Anthony L. Martin, of counsel), for appellant.

Pfaff, Garner & Terlizzi, of Salem, for appellees.

JUSTICE KARNS delivered the opinion of the court:
Plaintiffs-purchasers brought suit for breach of express oral warranty and implied warranty of merchantability on a contract for sale of a Caterpillar 955K tractor. Judgment in the amount of $23,950 was entered against defendant-seller upon the jury's general verdict in the circuit court of Marion County. Defendant appeals, contending it was entitled to judgment as a matter of law, arguing it was entitled to summary judgment, directed verdict and judgment *n.o.v.* by virtue of a disclaimer of warranty printed on the invoice which accompanied the sale.

Smith and Session, as partners, purchased the tractor from Chartrand Equipment Company on December 11, 1981. The sale followed several visits to defendant's place of business, at which time casual inquiries regarding secondhand equipment developed into discus-

sions about the 955K, which in turn developed into negotiation as to the terms of sale. The parties appear to be in agreement that the contract terms with respect to price, trade-in value on an HD10 tractor, additional work to be performed on the 955K, including undercarriage replacement and roll cage installation, method of payment, estimated time of delivery and place of delivery were all agreed upon prior to the invoice's being prepared. Serious engine problems developed; damages are not an issue.

The invoice, according to plaintiffs' position, represents little more than a bill of sale, evidence that the sale took place. They maintain that defendant's president, William Chartrand, sold the tractor with an express warranty against "majors" for 1,000 engine hours. Plaintiffs further maintain that the invoice disclaimer is ineffective to disclaim the alleged express warranty and also ineffective to exclude the implied warranty of merchantability contained in section 2—314 of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 2—314).

Defendant's position is that the invoice represents a final expression of the parties' agreement with respect to all essential terms and with particular regard to warranties. Defendant maintains that no express warranty was ever given, that evidence of such a warranty could not be proved by parol or extrinsic evidence, and that the implied warranty of merchantability was effectively excluded by the following invoice language:

> "Since the machinery sold is second hand, seller makes no warranty of quality or fitness for any purpose and sells the goods on an 'AS IS' basis. I acknowledge receipt of this statement /s/ Gregory C. Session."

Defendant here, in its prayer for judgment *n.o.v.* or a new trial, places principal emphasis on the trial court's alleged error in accepting parol evidence to negate or vary this language on the written invoice.

■ We first consider defendant's contention that the trial court erred in refusing to grant it summary judgment. In support of its contention, defendant points to plaintiffs' failure to respond to its motion for summary judgment and supporting affidavit by way of counteraffidavits or "similar documents" which would raise genuine issues as to material facts. Plaintiffs are not required, however, to file counteraffidavits. (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 381, 313 N.E.2d 457, 460; Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) While it is true plaintiffs failed to respond to defendant's motion with contradictory material, there remained genuine issues as to

material facts. The trial court must consider the pleadings, depositions, admissions, affidavits, and exhibits to determine whether the moving party is entitled to judgment as a matter of law. Even though the party opposing the motion fails to file counteraffidavits, the movant is not entitled to summary judgment unless the affidavits establish the right to a judgment as a matter of law. (*Spancrete of Illinois, Inc. v. Brickman* (1979), 69 Ill. App. 3d 571, 576, 388 N.E.2d 47, 51.) Here defendant's motion and affidavit merely contradicted factual allegations plaintiffs, by their verified complaint, had placed at issue. Plaintiffs' depositions, taken prior to defendant's motion, each provide evidentiary facts which directly contradict defendant's allegations.

For example, in William Chartrand's affidavit it is stated that at no time did he as defendant's agent make any warranties regarding the tractor, that all warranties express or implied were specifically disclaimed when it was sold "as is," and that plaintiff Session acknowledged this in writing. Plaintiffs, on the other hand, in their verified complaint and depositions, stated that William Chartrand as defendant's agent made an express oral warranty that the engine would perform for 1,000 hours. In his deposition, Session further testified that his name on the invoice was not his signature, and Smith in his deposition testified that he did not remember Session's acknowledging receipt of the invoice with the disclaimer. Other sworn statements tended to establish significant contradictory assertions of fact when compared to defendant's conclusory affidavit.

■ It is not evident that the right to summary judgment has been established. (See, *e.g., Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 574, 442 N.E.2d 648, 653, and cases therein cited.) The trial court did not err in denying defendant's motion for summary judgment.

Defendant contends the invoice was the final agreement of the parties containing the terms of sale. As to the implied warranty of merchantability, defendant argues that the invoice disclaimer language alone was sufficient to warrant a directed verdict on that count of the complaint. As to the alleged express warranty, defendant argues that since the invoice represented a final expression of the parties' agreement, under section 2—202 of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 2—202), parol or extrinsic evidence is inadmissible to vary or contradict its plain meaning. Thus, interpretation of the face of the invoice document being solely a question of law, defendant was entitled to a directed verdict on that count. *Bowers Manufacturing Co. v. Chicago Machine Tool Co.* (1983), 117 Ill. App.

3d 226, 453 N.E.2d 61.

William Chartrand testified that his company never gave a warranty on a sale of used equipment. He added, however, that some of the time he did give a warranty. In this case, he testified, the parties had a discussion of manufacturer's warranties regarding the new undercarriage. They also had a discussion about a warranty he thought might be obtainable from Caterpillar, but he did not warrant the engine for 1,000 hours. Chartrand emphasized his reliance on the invoice disclaimer language, although he did acknowledge in his testimony that plaintiffs were "very persistent" about getting some kind of warranty on the tractor. He testified that he told plaintiffs on several occasions that the tractor carried no warranties whatsoever.

Plaintiffs' evidence, on the other hand, if believed, establishes that an express warranty was given by William Chartrand. Session testified that plaintiffs asked Chartrand for a warranty. He testified that Chartrand said he usually did not warrant a used tractor, but since Chartrand had just completed repair work on the engine, he would warrant it for major repairs for 1,000 hours of operating time. Smith's testimony was the same in substance. David Uhls, who testified that he was present when the plaintiffs were negotiating with Chartrand, also testified that William Chartrand expressly warranted the tractor for 1,000 hours before an agreement was reached on the purchase of the tractor.

Two provisions of the Uniform Commercial Code are particularly applicable to our disposition of this case. Section 2—202 of the Code (Ill. Rev. Stat. 1981, ch. 26, par. 2—202) provides:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (Section 1—205) or by course of performance (Section 2—208); and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

This provision must be considered with section 2—316 of the Code (Ill. Rev. Stat. 1981, ch. 26, par. 2—316), which provides:

"(1) Words or conduct relevant to the creation of an express

warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article on parol or extrinsic evidence (Section 2—202) negation or limitation is inoperative to the extent that such construction is unreasonable.

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'

(3) Notwithstanding subsection (2)

(a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

* * * ''

■ It seems obvious that this invoice, or bill of sale, was not intended to be a final and complete expression of the agreement of the parties, for the parties do agree that other matters were agreed upon before the invoice was prepared which are not mentioned in the document. In their handbook on the Commercial Code, White and Summers state that the question is not the completeness of the document as to the entire agreement, but the agreement or expression of understanding with respect to the specific matter in question, here the existence of any warranty of the tractor for any purpose. (J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code sec. 2—10 (2d ed. 1980).) If the trial court in the first instance determines that the writing does express the final agreement of the parties as to a particular term or matter, section 2—202 requires that no evidence be admitted to contradict or vary the understanding of the parties as to that particular matter or term. If the specific matter agreed upon or confirmed in writing is the disclaimer of any warranty, then all warranties are excluded under the provisions of section 2—316 of the Code.

The question remains, however, whether the parties intended this disclaimer of warranties to be the final expression of their agreement as to the existence of warranties, particularly express oral warranties.

Here, the disclaimer was printed on the bottom of the bill of sale or invoice. This document also served as a receipt for payment of the purchase price and set forth that the seller credited the purchaser with $3,000 on the trade-in of the used HD10. It does not purport to be a contract executed by both parties that contains all the details of the transaction.

■■ ■ The trial court found that it was not intended to be the final expression of the agreement of the parties. Section 2—316(1) states that "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed whenever reasonable as consistent with each other; but subject to the provisions of this Article on parol or extrinsic evidence (Section 2—202) negation or limitation is inoperative to the extent that such construction is unreasonable." The comment to section 2—202 states that a writing is presumed not to express the full agreement of the parties unless the court, presumably the trial court, so finds, citing as authority the case of *Fuchs & Lang Manufacturing Co. v. R. J. Kittredge & Co.* (1909), 242 Ill. 88, 89 N.E. 723, and rejecting the rule of *Armstrong Paint & Varnish Works v. Continental Can Co.* (1921), 301 Ill. 102, 133 N.E. 711. (Ill. Ann. Stat., ch. 26, par. 2—202, Illinois Code Comment, at 124 (Smith-Hurd 1963).) Section 2—202 rejects "[a]ny assumption that because a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon" (Ill. Ann. Stat., ch. 26, par. 2—202, Uniform Commercial Code Comment, at 125 (Smith-Hurd 1963); Restatement (Second) of Contracts sec. 210(3) (1981)). Thus, the disclaimer language may be considered as pertaining only to the implied warranty of merchantability under section 2—314 of the Code (Ill. Rev. Stat. 1981, ch. 26, par. 2—314), if given any purpose, and would have no effect on the express oral warranty that the tractor engine would operate for 1,000 hours, which the parties may have previously agreed upon.

■■ The evidence was extensive and conflicting. The jury was properly instructed. Under its general verdict, the jury could reasonably find that defendant had expressly warranted the engine for 1,000 hours of satisfactory operation. Defendant did testify that the engine was recently overhauled; it would not be unreasonable for the court to conclude that a fact question remained whether there was agreement for an express warranty, and the jury's determination that there was an express warranty is clearly not against the manifest weight of the evidence.

The trial court initially received the evidence of warranty condi-

tionally. The court stated that the question was one of law in the first instance but that a ruling could not be made until evidence was presented. The court stated:

> "I think it's a matter of law. I can't rule on this until there is some facts in that regard. I'm ruling on it in the abstract at this point. I think that the inferences to be drawn from all this are so varied that I have to deny the motion for summary judgment, but there may be a point in time in this trial when we've got, we can get down to the question of whether the Court as a matter of law can rule whether or not this disclaimer is part of an agreement. If it is, obviously it would have some force in law. If it isn't, then it has no place in the case; and then it would be the jury's question to decide what was said as part of the oral contract."

The trial court adopted the correct procedure. After considering all the evidence, the trial court concluded that the invoice was not intended as the final expression of the parties' agreement as a matter of law. This is the procedure adopted by section 2—202 of the Code and approved by accepted authorities. (J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code sec. 12—4, at 434-35 (2d ed. 1980); 2 R. Anderson, Uniform Commercial Code sec. 2—202:23 (3d ed. 1982); 3 Corbin on Contracts sec. 578 (2d ed. 1960).) The factual question of the agreement of an express oral warranty was thereafter resolved in plaintiffs' favor by the jury.

■ *Bowers Manufacturing v. Chicago Machine Tool Co.* (1983), 117 Ill. App. 3d 226, 453 N.E.2d 61, relied on by defendant, is distinguishable. There the trial court held that a detailed lease-purchase agreement was intended as a final expression of the parties' agreement and that under section 2—202 of the Code, evidence of prior, preliminary negotiations were not admissible. The question in the first instance must be resolved by the trial court, and its decision will not be disturbed on review absent a clear abuse of discretion.

■ The defendant complains of the giving of plaintiffs' instruction No. 17, which told the jury, "A warranty, either express or implied, which arises as a result of the parties' oral agreement may not be disclaimed by the Seller by means of a document thereafter submitted to the Buyer." Once the parties have reached an agreement for express oral warranties, the seller may not thereafter unilaterally disclaim all warranties. Plaintiffs' instruction No. 17 was in accord with the rule established in *Midland Supply Co. v. Ehret Plumbing & Heating Co.* (1982), 108 Ill. App. 3d 1120, 440 N.E.2d 153, and *Album Graphics, Inc. v. Beatrice Foods Co.* (1980), 87 Ill. App. 3d 338, 408

N.E.2d 1041. While the time interval between the agreement for sale and the unilateral disclaimer of warranties was of shorter duration, there is no reason why the seller should be allowed to unilaterally disclaim any agreement for express oral warranty after the terms of sale have been agreed upon and plaintiffs had performed by payment of the purchase price. The jury was also instructed that "[i]n any contract for the sale of goods all warranties, express or implied, are properly excluded when the goods are sold 'as is.' " The jury concluded that the tractor was not sold "as is."

The judgment of the circuit court of Marion County is hereby affirmed.

Affirmed.

JONES, P.J., and WELCH, J., concur.